**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STERLING HAINEY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-1387** |
| | : | |
| **BLANCHE CARNEY,** | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

**YOUNGE, J.**                                        **MAY 2, 2022**

Plaintiff Sterling Hainey, an inmate currently confined at the Philadelphia Industrial Correctional Center ("PICC"), filed this action alleging violations of his civil rights based on events that occurred while he was housed at PICC and Curran-Fromhold Correctional Facility ("CFCF"). Named as Defendant is Blanche Carney, Commissioner of the Philadelphia Department of Prisons ("PDP"). (*See* ECF No. 2 (Compl.) at 1, 2.) Defendant Carney is sued in her individual and official capacities. Hainey also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Hainey leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). He will be granted leave to file an amended complaint as set forth more fully below.

I.      **FACTUAL ALLEGATIONS**[1]

Utilizing a form Complaint along with a lengthy, handwritten supplement, Hainey presents numerous claims relating to his confinement that began on April 7, 2021. (*See* Compl.

---

[1] The allegations set forth in this Memorandum are taken from Hainey's Complaint and public dockets, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

at 4-50.)[2]  Hainey asserts that "one of the very first alarming incidents was the excessively unnecessary force and brutality . . . during the intake process."  (*Id.* at 5.)  Hainey avers that "an officer of whom is anonymous as his shield/name tag wasn't in eye shot during the incident used brutal force while I was in restraints."  (*Id.*)  He asserts that he suffered injuries to his left hand during this incident.  (*Id.*)

Hainey also raises multiple allegations regarding the conditions of his confinement.  (*See id.* at 12-31, 40-43.)  With regard to the cells at PICC, Hainey asserts that there is "a significant amount of human secretions of saliva, and phlegm, regurgitated from a prior inmate's respiratory tract, all over the cells, beds, walls, and floor, and all over the faucet aqueduct of the sink basin."  (*Id.* at 12.)  He also alleges that urine and feces are smeared over various cell surfaces, and that inmates are provided with inadequate cleaning materials.  (*Id.* at 12-13.)  The cells "are often unbearably frigid," the "drainage mechanism" for the sinks does not function properly, the toilets often do not flush properly, and "due to the obstruction of a conduit break beneath the facility the dormitory cell units have been completely submerged in standing puddles of sewage debris as a direct result."  (*Id.* at 13-15, 19.)  Hainey claims that these conditions threaten the well-being of the cell occupants.  (*Id.* at 15.)  Hainey further contends that the "cell units" are overcrowded.  (*Id.*)  Additionally, "the PDP facilities," including PICC and CFCF, are infested with cockroaches, and other insects, as well as mice and other rodents, cats, and birds resulting in unhealthy conditions.  (*Id.* at 16-20.)  Hainey further asserts that "PDP correctional officials have knowingly and intentionally denied and deprived" him of adequate quantities of toilet paper and

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

paper towels despite repeated requests, causing physical injuries to Hainey when he was forced to utilize alternative materials.  (*Id.* at 40-42.)[3]

According to Hainey, the water flow is inadequate for showering, and "the inmate population on A unit and H-1 unit . . . were seldomly afforded the privilege or luxury of enjoying the amenities of a 'hot shower.'"  (*Id.* at 21-22.)  He further claims that while he was "assigned in custody to H-1[,] unit dormitory cell units were recently welded with dead bolt locks fastened on the opposite side of the door," which violates the fire code.  (*Id.* at 23.)  Hainey also takes issue with the "new digital presumably state of the art system" recently implemented on "A-unit" that controls cell doors.  (*Id.*)  Hainey theorizes that in the event of a power outage, inmates "would consequently be stuck, and left[] to die in the flames as its not likely C.O. officials would attempt to manually release cell occupants by key."  (*Id.* at 24.)  Hainey also alleges that on February 20, 2022, "A-unit" experienced a power outage that lasted for approximately six days, leaving the occupants of the unit unable to read or write, affecting their ability to correspond with family and legal counsel.  (*Id.*)

Hainey further contends that he was denied "recreation time to attend personal hygienic needs of sanitation and showering."  (*Id.* at 43.)  He asserts that "the administration" has implemented a policy that "has been dubbed . . . restrictive movement" and that "corrections officials keep inmates locked in cells over perpetually long extended periods of time without relief for days on end without the option to shower."  (*Id.*)

Hainey also takes great issue with the quality of the food provided by the PDP.  (*See id.* at 25-31.)  For example, he claims that dairy products are "consistently served beyond the

---

[3] Hainey further claims that he was not adequately treated for rectal hemorrhaging upon submission of sick call slips, and that he was "denied a clean exchange of bed linens sheets, dry towels, and wash cloths replenishment" as required by the Inmate Handbook.  (Compl. at 41.)

prescribed dates of expiration, often curdled, sour beyond edible digestion," the "meal trays often arrive open due to unsecured protective cellophane exposing its contents," hair is found in the food, "poultry items are often severely undercooked . . . or overcooked," and that pasta, eggs, vegetables, and sausage are not prepared properly.  (*Id.* at 25-28.)  Bread is often moldy, condiments are not provided, and cold cuts appear to be spoiled.  (*Id.* at 29.)  Hainey asserts that the poor food quality causes him severe gastrointestinal distress.  (*See id.* at 29-30.)

Hainey also alleges that on January 13, 2022, he tested positive for Covid-19.  (*Id.* at 33.) He appears to assert that "all municipal corporations" were deliberately indifferent to his medical needs in that he "was not given an accurate summary of diagnosis nor prognosis for malignant infection for which I was presumably found positive of."  (*Id.* at 31-33.)  Hainey has been administered Covid tests while incarcerated and surmises that he "had to have contracted and acquired this malignant virus from within the custody of either of the multiple facilities" in which he has been detained.  (*Id.* at 34-35.)  According to Hainey, once he tested positive for Covid-19, the "PDP administrative, correctional personnel made absolutely no effort whatsoever to properly isolate" him.  (*Id.* at 35.)  His requests to be quarantined were ignored and "PDP medical administrative personnel" provided "no treatment, or vaccinations to combat the virus" other than "routine triage of temperature analysis."  (*Id.*)  He further asserts that "upon the diagnosis/prognosis of PDP medical administrative personnel there was a breach of confidentiality/resulting in the deliberate indifference toward physician/patient privilege in regards to the privacy of [his] medical records."  (*Id.* at 37.)

Hainey also contends that his "request for non-restrictive access and utilization of the PDP facilities' law library were . . . denied and blatantly disregarded."  (*Id.* at 38.)  As a result, Hainey asserts that the was "not afforded the privilege or luxury to adequately prepare for my

case in advance" of the judicial proceedings and he was "unable to effectively and successfully petition the Court on motions based upon the premise of (habeas corpus) statu[t]es to incur immediate release."  (*Id.* at 38-39; *see also id.* at 46-67.)  He further avers that the PDP Inmate Handbook "suggest[s] that law libraries are accessible and available in all facilities according to policy" but that this is not implemented.  (*Id.* at 39.)

According to Hainey, on March 15, 2022, "corrections officials" conducted an "unannounced cell search in which the correctional officers completely desecrated and ransacked my entire cell unit."  (*Id.* at 44.)  He further contends that "correctional officers then discarded sacred religious memorabilia such as Bibles[, and] other vitally important religious literature of both sacred and sentimental value."  (*Id.*)  Additionally, Hainey claims that "[t]here are no religious services and meetings with clergy; at all on and or within the premises of the facility."  (*Id.* at 45.)

State court dockets reflect that Hainey entered a negotiated guilty plea and was sentenced on March 10, 2022.  *See Commonwealth v. Hainey*, CP-51-CR-0004488-2021 (C.P. Phila.), *Commonwealth v. Hainey*, CP-51-CR-4452-2021 (C.P. Phila.).  Thus, Hainey has been confined as a pretrial detainee and as a convicted prisoner during the time relevant to his claims.

Additionally, Hainey avers that he has submitted many grievances which were not addressed.  (*See generally* Compl. at 4-50.)  He seeks monetary damages in connection with his claims.  (*See id.* at 5, 50.)

## II.    STANDARD OF REVIEW

The Court grants Hainey leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (internal quotations omitted).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Hainey is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F.3d at 245).

---

[4] However, as Hainey is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is

Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).  In a §1983 action, the personal involvement of each defendant in the alleged

constitutional violation is a required element, and, therefore, a plaintiff must allege how each

defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Hainey has named only Commissioner Carney, in her individual and official capacities,

as a Defendant in this case.  (*See Compl.* at 1-2.)  As set forth more fully below, Hainey has

failed to allege a plausible claim against this Defendant.  He also includes in the body of his

Complaint a list of names of "all PDP correctional officers who have in some capacity actively

attributed to the nature of my complaint, through the callousness of deliberate indifference,

failure to act and respond, reasonable within the scope of their occupational descriptions."  (*See*

*id.* at 48-49.)  Even if Hainey intended to name the listed individuals as Defendants, he failed to

articulate the personal involvement of any in the alleged constitutional violations as is required.

*See Rode*, 845 F.2d at 1207 ("Allegations of participation or actual knowledge and acquiescence

. . . must be made with appropriate particularity.").  In other words, he has not alleged what each

of these individuals did, or did not do, to violate his constitutional rights.  While some of the

events described by Hainey could rise to the level of a constitutional claim, the Court cannot

make this determination from Hainey's Complaint as currently pled in the absence of allegations

tying the challenged conditions or events to the responsible individual or individuals, especially

considering the number of claims at issue and individuals potentially responsible.  Additionally,

some of Hainey's allegations fail to set forth a basis for a constitutional claim, as set forth further

below.

> **A.      Claims Based on the Use of Excessive Force**

Hainey claims that he was subjected to "excessively unnecessary force and brutality . . .

during the intake process."  (Compl. at 5.)  According to Hainey, he suffered injuries to his left

hand when "an officer . . . used brutal force while I was in restraints."  (*Id.*)  Because Hainey was

a pretrial detainee during the relevant event, the Due Process Clause of the Fourteenth

Amendment governs his excessive force claims.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397

(2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force

that amounts to punishment.") (internal quotation and citation omitted); *Hubbard v. Taylor*, 399

F.3d 150, 166 (3d Cir. 2005).  To state a due process violation based on excessive force, a

detainee must allege facts to plausibly suggest that "that the force purposely or knowingly used

against him was objectively unreasonable."  *Kingsley*, 576 U.S. at 396-97.  "[O]bjective

reasonableness turns on the 'facts and circumstances of each particular case.'"  *Id.* at 397

(quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "Considerations such as the following

may bear on the reasonableness or unreasonableness of the force used:  the relationship between

the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any

effort made by the officer to temper or to limit the amount of force; the severity of the security

problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Hainey's allegations concerning the use of excessive force against him are conclusory and not plausible as stated. He claims that "an officer of whom is anonymous as his shield/name tag wasn't in eye shot during the incident" used excessive force and injured his hand during the intake process. (Compl. at 4.) To plausibly allege a claim, however, Hainey must allege sufficient facts from which one could infer that the force was excessive. Here, Hainey fails to allege facts describing the force used and the circumstances under which it was used.

**B.    Claims Based on Denial of Access to the Courts**

Hainey alleges that he was denied "non-restrictive" access to the prison's law library. (Compl. at 38-39, 46-47.) A claim asserting restrictions on access to the prison law library is considered as an "access-to-the-courts" claim under the First Amendment. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*). "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' -- that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (*per curiam*) (A pretrial detainee "making an access to courts claim is required to show that the denial of access caused actual injury."). Furthermore, "the underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415. In addition, the right to access the courts may

be satisfied if the plaintiff has an attorney.  *Diaz*, 532 F. App'x at 63 (internal citations omitted); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).

Hainey has failed to plausibly allege any actual injury as a result of a named Defendant's conduct that could equate to a denial of access to the courts.  He alleges, without specificity, that he was unable to "effectively and successfully petition the Courts on motions based upon premise of (habeas corpus) [statutes] to incur immediate release."  (Compl. at 38-39, 46-47.) Hainey has not alleged what underlying nonfrivolous claims he was unable to pursue as a result of any Defendant's actions.  *See, e.g.*, *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim); *see also Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (*per curiam*) (no denial of access to the courts where inmate, *inter alia*, failed to allege what underlying nonfrivolous claims he was unable to pursue).

C.     **Claims Based on Covid-19**

Hainey contends that he was informed of a positive Covid-19 test result on January 13, 2022, but was denied "a legible hard copy verifying" the results.  (Compl. at 33.)  He indicates that he contracted the virus while incarcerated.  (*Id.* at 35.)  He appears to further allege that "PDP medical administrative personnel" denied him access to medical care in that he was "provided no treatment or vaccinations to combat the virus" other than "routine triage of temperature analysis" and that "PDP administrative correctional personnel made absolutely no effort whatsoever to properly isolate" him after he contracted the virus.  (*Id.*)  Additionally, Hainey asserts that cleaning supplies that are "required and recommended by the . . . Center for

Disease Control" "were . . . not being provided even after numerous attempts of verbal and written request." (*Id.* at 36.)

It is well-settled that to state a constitutional claim based on the failure to provide medical treatment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5]  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

In *Hope v. Warden York County Prison*, the United States Court of Appeals for the Third Circuit explained that "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety."  972 F.3d 310, 329 (3d Cir. 2020) (citing *Nicini v. Morra*, 212 F.3d 798, 811

---

[5] As it appears that Hainey was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims.  *See Hubbard*, 399 F.3d at 166.  However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

(3d Cir. 2000)).  The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating claims in this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the Covid-19 pandemic, as constitutional rules "are not subject to mechanical application in unfamiliar territory."  *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).  Thus, where the facility has taken concrete steps towards mitigating the medical effects of Covid-19 on a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting Covid-19, notwithstanding even serious preexisting medical conditions the prisoner may have. *Id.* at 330-31.

Hainey's claims concerning Covid-19 are vague.  (*See generally* Compl. at 32-37.) While Hainey alleges that he tested positive for Covid-19, he does not allege the extent to which the virus affected him, what his symptoms were, and what medical care he required to treat those symptoms that he is claiming he did not receive.  Absent additional information, it is unclear that Covid-19, as it affected Hainey, presented a serious medical need.  Even assuming that Covid-19 presented a serious medical need in this case, Hainey has not alleged facts showing that any particular individual was aware of his need for medical care but refused him that care.  In other words, he has not alleged facts showing deliberate indifference.  Moreover, even crediting Hainey's assertions, there is no allegation that any individual defendant's actions resulted in his exposure to Covid-19 or that he suffered a harm.  Further, to the extent that he alleges that he may have contracted Covid-19 because of unsanitary conditions, he has not alleged sufficient

facts to state a claim.  Thus, because Hainey's allegations concerning his medical treatment, or

lack thereof, are unclear, he has not alleged a plausible deliberate indifference claim.  *See, e.g.,*

*Arteaga v. Hudson County Corr. Center*, No. 21-19982, 2022 WL 884361, at *4 (D.N.J. Mar. 25,

2022) (dismissing pretrial detainee's claims based on Covid-19 exposure for failure to allege

sufficient facts); *Adames v. Pistro*, No. 21-2855, 2021 WL 2903064, at *2 (E.D. Pa. July 9,

2021) ("[Adames] alleges that he contracted COVID-19 while incarcerated but does not allege

any facts from which it could be inferred that the conditions in which he was confined were

constitutionally deficient.  His diagnosis alone is an insufficient basis upon which to establish a

constitutional violation.").[6]

### D.    Claims Based on Religion

Hainey alleges that on March 15, 2022, "corrections officials" conducted "an

unannounced cell search" and "completely desecrated and ransacked" Hainey's cell.  (Comp. at

44.)  He avers that "correctional officers . . . discarded sacred religious memorabilia such as

Bibles[,] other vitally important religious literature of both sacred and sentimental value."  (*Id.*)

Hainey further claims that "[t]here are no religious services and meetings with clergy; at all on

and or within the premises of the facility."  (*Id.* at 45.)

The Supreme Court has recognized that the First Amendment guarantees that all

prisoners must be afforded reasonable opportunities to exercise their religious freedom.  *Cruz v.*

*Beto*, 405 U.S. 319, 322 n.2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987)

("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive

---

[6] Hainey also contends that "upon the diagnosis/prognosis of PDP medical administrative personnel there was a breach of confidentiality/resulting in the deliberate indifference toward physician/patient privilege in regards to the privacy of [his] medical records."  (Compl. at 37.) He claims that "this breach of privacy was not authorized by my consent," but does not indicate clearly what information was allegedly disclosed or to whom.

that no law shall prohibit the free exercise of religion.") (citations omitted).  However, the First

Amendment only protects sincerely held religious beliefs, not "[t]he mere assertion" of a

religious belief.  *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).  Hainey has not adequately

alleged his religious beliefs.  Indeed, Hainey does not identify his religion, describe the lost

property with any specificity, or explain how the lost property was required for him to exercise

his faith.  Accordingly, the Complaint does not state a plausible Free Exercise claim.  *See Peele*

*v. Klemm*, 663 F. App'x 127, 130 (3d Cir. 2016) (*per curiam*) (upholding dismissal of First

Amendment claim where "Peele failed to provide any factual support for his First Amendment

claims beyond general conclusory allegations that DC–819 was inimical to his and possibly other

inmates First Amendment rights"); *Grohs v. Santiago*, No. 13-3877, 2014 WL 4657116, at *10

(D.N.J. Sept. 17, 2014) (dismissing free exercise claim where plaintiff "never identified his faith

nor has he identified the sincerely held religious beliefs that required him to retain [certain

religious] materials").

Hainey also brings claims under RLUIPA.  "Congress enacted RLUIPA . . . 'in order to

provide very broad protection for religious liberty.'"  *Holt v. Hobbs*, 574 U.S. 352, 356 (2015)

(quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)); *see* 42 U.S.C. §

2000cc, *et seq.*  The United States Supreme Court recently stated:

> RLUIPA provides that "[n]o government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an institution" - including
> state prisoners - "even if the burden results from a rule of general applicability,
> unless the government demonstrates that imposition of the burden on that person -
> (1) is in furtherance of a compelling governmental interest; and (2) is the least
> restrictive means of furthering that compelling governmental interest."  42 U.S.C.
> § 2000cc-1(a).  A plaintiff bears the initial burden of proving that a prison policy
> "implicates his religious exercise."  *Holt*, 574 U.S., at 360, 135 S. Ct. 853.
> Although RLUIPA protects "any exercise of religion, whether or not compelled
> by, or central to, a system of religious belief," § 2000cc-5(7)(A), a prisoner's
> requested accommodation "must be sincerely based on a religious belief and not
> some other motivation," *id.*, at 360-361, 135 S. Ct. 853.  The burden on the

prisoner's religious exercise must also be "substantial[ ]."  *Id.*, at 361, 135 S. Ct. 853.

*Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022).  "For the purposes of RLUIPA, a substantial burden exists where:  1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."  *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).  RLUIPA does not provide a basis for claims against individual officials in their individual capacities.  *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).  Hainey simply has not explained how any of the limitations at the institutions in which he was confined substantially burden his sincere religious exercise. Accordingly, Hainey's undeveloped allegations also do not state a plausible RLUIPA claim.[7]

**E.    Claims Based on Grievances**

Hainey repeatedly states throughout the Complaint that he filed prison grievances but that they were rejected or ignored.  (*See generally* Compl. at 6-50.)  To the extent that Hainey alleges a violation of his rights solely with respect to the denial of, or nonresponse to, his grievances, claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774,

---

[7] The Court notes that Hainey's First Amendment claim fails as well because "a claim that cannot satisfy RLUIPA's threshold merits inquiry necessarily fails as to the First Amendment." *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 60 (3d Cir. 2021) (*per curiam*). Additionally, although Hainey also cites to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1 *et seq.*, in support of his claims, (*see* Compl. at 44), the RFRA is inapplicable here as it only applies to the federal government.  *See Francis v. Mineta*, 505 F.3d 266, 269 n.3 (3d Cir. 2007); *see also Honkala v. U.S. Dep't of Hous. & Urb. Dev.*, No. 21-0684, 2022 WL 282912, at *6 (E.D. Pa. Jan. 31, 2022) (RFRA did not apply to claims against the City of Philadelphia).

777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).  Accordingly, any facts alleged by Hainey about grievances do not give rise to a plausible basis for an independent constitutional claim.

      **F.**     **Claims Based on Conditions of Confinement**

      Hainey primarily raises claims regarding the conditions of his confinement at PICC and CFCF, describing numerous conditions and deficiencies that allegedly violate constitutional standards, including allegations of substandard food, insect and rodent infestations, lack of heat and hot water, insufficient personal hygiene and cleaning supplies, and inadequate plumbing. (*See* Compl. at 12-31, 40-43.)  The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard*, 399 F.3d at 166.  To establish a basis for a Fourteenth Amendment violation based on the conditions of his confinement, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *see also Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective.").  To the extent Hainey seeks to bring claims regarding the conditions of his confinement after he was sentenced, the Eighth Amendment would govern his claims.  *See Hubbard*, 399 F.3d at 166.

      Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39,

539 n.20).  In general, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Seiter*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 at 837).  However, a claim based on negligence is insufficient to allege a claim under § 1983.  *See Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").

The Court recognizes that unsanitary conditions can support a cognizable § 1983 conditions of confinement claim.  *See e.g., Mutschler v. Tritt*, No. 20-2022, 2021 WL 5445810, at *3 (3d Cir. Nov. 22, 2021) (allegations of unsanitary conditions in prisoner's cell were sufficient to state a cognizable Eighth Amendment claim); *Conway v. Cty. of Camden*, No. 16-9550, 2017 WL 3783263, at *2-3 (D.N.J. Aug. 31, 2017) (finding plaintiff sufficiently pled a plausible basis for a claim that he experienced unconstitutionally punitive conditions as a detainee where he alleged, *inter alia*, that he was housed in a two-person cell with three other people and required to sleep on the floor next to the toilet with only a thin mattress, facility had only one set of fingernail clippers for all inmates on the unit and plaintiff sustained a skin infection, mold caused plaintiff to sustain respiratory problems, there was a lack of hot water in the cells, plaintiff sustained insect bites, and was housed with inmates infected with M.R.S.A.); *see also Martin v. Gearhart*, 712 F. App'x 179, 187 (3d Cir. 2017) (*per curiam*) (noting that

"exposure to human waste carries particular weight in the conditions calculus" ) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).  Nonetheless, a plaintiff must allege facts about the duration and extent of the deprivation to establish how a basic need was not met, and must allege how he was harmed by the unsanitary conditions.  *See Abner v. Ellis*, No. 21-15359, 2021 WL 5827733, at *2 (D.N.J. Dec. 8, 2021) (dismissing plaintiff's conditions of confinement claim because plaintiff failed to provide sufficient facts about the length of time he was deprived of working showers, water fountains, and laundry service, and it was unclear if these deprivations occurred sporadically or continuously); *see also Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (*per curiam*) (concluding that denial for showers for fifteen days did not violate Eighth Amendment when inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) (concluding that whether plaintiff suffered harm was critical to determination of whether unsanitary conditions were unconstitutional).

In any event, because he only named Commissioner Carney as a Defendant, the Court construes the Complaint as alleging that Commissioner Carney was responsible for the unconstitutional conditions at PICC and CFCF while Hainey was detained there simply because she is the Commissioner of the PDP.  Claims against Commissioner Carney in her official capacity are, in essence, claims against the City of Philadelphia.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).  That is, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [employing] entity."  *Id.*

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiff "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").[8]

_____

[8] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*; *see also Johnson v. City of Phila.*, 975 F.3d 394, 403

With regard to individual liability claims against Commissioner Carney specifically, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.* "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the

_____

(3d Cir. 2020) (to demonstrate a failure to train or supervise, the plaintiff can establish deliberate indifference by identifying a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary, or by showing that the need for more or different training was so obvious). The Court does not understand Hainey to allege a failure to supervise, train, or discipline as the basis of his municipal liability claims challenging his conditions of confinement.

person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316.  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Thus, to the extent that Hainey seeks to proceed on a theory of supervisory liability, he must allege facts showing the named Defendant's actual knowledge of the alleged violations or participation therein.  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).  Even assuming that some of the allegations could be liberally construed to support a constitutional claim, Hainey has not adequately tied his allegations to Commissioner Carney.  Indeed, Hainey presents no specific allegations against Commissioner Carney in the Complaint.  *See Ogrod v. City of Philadelphia*, No. 21-2499, 2022 WL 1093128, at *14 (E.D. Pa. Apr. 12, 2022) (finding

plaintiff, who only alleged that supervisor-defendant was a Lieutenant in the Special

Investigations Unit and that other defendants reported to him, failed to support a plausible claim

for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar.

28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his

employees solely because he is a supervisor.").  Instead, Hainey claims that  "PDP administrative

correctional personnel," "corrections officers," or "PDP correctional officials" engaged in certain

conduct that violated his rights.  However, a plaintiff generally cannot state a claim by repeatedly

and collectively referring to the "Defendants" as a group without clarifying the specific basis for

each Defendant's liability.  *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014)

(agreeing with the district court that the repeated and collective use of the word "Defendants"

"fail[ed] to name which specific Defendant engaged in the specific conduct alleged'").[9]

Thus, Hainey's conditions of confinement claims against Commissioner Carney are

implausible as pled and will be dismissed without prejudice pursuant to 28 U.S.C. § 1915

(e)(2)(B)(ii).  Because the Court cannot say that Hainey can never state a plausible claim against

---

[9] The Court notes that the only policy that Hainey mentions in his Complaint pertains to his claim regarding access to showers.  He alleges that prison administration has implemented a "restrictive movement policy" pursuant to which corrections officers "keep inmates locked in cells over perpetually long extended periods of time without relief for days on end without the option to shower."  (Compl. at 43.)  Even if this policy is fairly attributable to Commissioner Carney, the policy as described by Hainey does not sufficiently allege a constitutional violation. *See, e.g., Fortune*, 379 F. App'x at 122 ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days.  Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Barndt v. Wenerowicz*, No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016), *aff'd*, 698 F. App'x 673 (3d Cir. 2017) (denial of showers and out of cell exercise for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and had access to running water in his cell).

an appropriate defendant based on the conditions of his confinement at PICC or CFCF, he will

be given leave to file an amended complaint.

## IV.     CONCLUSION

As set forth more fully above, Hainey's § 1983 claims against Commissioner Carney are

dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Cognizant of Hainey's

*pro se* status, the Court will grant Hainey an opportunity to "flesh out [his] allegations by . . .

explaining in the amended complaint the 'who, what, where, when and why' of [his] claim."  *See*

*Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16,

2019).  Any amended complaint should clearly describe the factual basis for Hainey's claims

against the relevant defendants and how each defendant was involved in the alleged denial of his

Constitutional rights.

An appropriate Order follows.

**BY THE COURT:**

**/s/ *John Milton Younge***
**JOHN M. YOUNGE, J.**